## WARREN GEORGE *versus* JAMES STUBBS.

Where chattels are sold on condition of receiving a certain sum in payment within a stipulated time, the title to the chattels does not pass until the money is paid.

But if one man sells chattels to another, and the title thereto passes, that title, so far as it respects creditors, cannot be transferred again to the seller merely by an acknowledgement in writing, that the property is his, without the payment of a valuable consideration therefor.

It is the duty of the Court, on request, to instruct the jury what the law is, applicable to the testimony in the case; but it is not its duty to express an opinion, on request, as to the effect of that testimony, when it is contradictory, or as to its tendency to produce a particular result.

The declarations of a witness, made to others, that he is interested in the event of a suit, do not prove him to be so, or that he is an incompetent witness.

TROVER for a yoke of oxen. The defendant justified the taking, as a constable, on a writ in favor of Lowell against Joseph Smith, alleging the property of the oxen, at the time, to have been in Smith. The only question made at the trial

before ALLEN, District Judge, was, whether the oxen were the property of the plaintiff or of Smith, on August 18, 1843, the time of the attachment.

The whole of the evidence is given in the exceptions, and enough of it is stated in the opinion of this Court to understand the application of the law to the facts.

The defendant, at the trial, contended that upon the evidence, the action could not be maintained ; that the papers of July 14, 1841, were conclusive against the plaintiff; that the payment of the sixty-five dollars rendered the sale absolute ; that by the terms of the contract, as proved, it was a sale, and the 'property passed absolutely, leaving it optional with Smith either to return the oxen or to pay the money ; and that the acknowledgment of July 8, 1842, could not pass the property from Smith to the plaintiff.

The defendant also contended that the transactions relative to the oxen, between the plaintiff and Smith, was fraudulent as to Smith's creditors.

ALLEN, District Judge, instructed the jury, that the plaintiff had shown property in the oxen, unless the defendant proved, that Smith had paid the sixty-five dollars in pursuance of the terms of the contract of July 14, 1841 ; that the receipt signed by the plaintiff, and dated July 14, 1841, was evidence of such payment, and, if unexplained, would show such performance on the part of Smith as would vest the property of the oxen in him.

The presiding Judge further instructed the jury, that if from the testimony of Wood, and the other evidence in the case, they believed, that the payment by Wood to the plaintiff, referred to in said receipt, was prior in point of time to the contract dated July 14th, for the sale of the oxen, that then such payment could not be in discharge of the proviso in said contract of sale ; and submitted it as a question of fact for them to determine upon the whole evidence in the case ; that if they should find that said payment was made in the performance of the proviso in said contract, that they should render a verdict for the defendant, but if they should find that pay-

ment was not so made, they would return a verdict for the plaintiff.

The defendant also requested the Court to instruct the jury, that there was evidence tending to show, that the transactions relative to the oxen between plaintiff and Smith were fraudulent as against Smith's creditors, which instruction the Court declined to give, and gave the jury no instructions on the subject.

To all which rulings and instructions of the Judge the defendant excepted.

Copy of paper dated July 14, 1841 : —

" Borrowed and received of Warren George one pair of oxen nine years old, more or less, always subject to him or his order, life and limb of said oxen always at my risque during the whole time he may permit them to remain with me. And I do further agree to pay him a reasonable sum of money for the use of said oxen during the whole time he may permit them to remain in my hands.

" Provided nevertheless, if I pay him sixty-five dollars and interest from date hereof, which sixty-five dollars is also to be applied to certain notes, he, the said George, now holds against me, then the said oxen are to become my property, if said sixty-five dollars shall be paid on or before May 8, 1842.

" *Bucksport, July 14, 1841.*

" Joseph Smith."

Copy of indorsement thereon : —

" Know all men by these presents, that the within named George, permitted me, the said Joseph Smith, to change the within named oxen for him, the said George, to get another yoke of oxen, which oxen I do by this my signature acknowledge to be the property of the said Warren George.

" Joseph Smith.

" Bucksport, July 8, 1842.

" Attest — Jonathan Wood."

Copy of the receipt : —

" Received of Joseph Smith, by Jonathan Wood, sixty-five

dollars, to be applied to his notes, which notes said Smith gave him for land, when called for.

" Warren George,

" Bucksport; July 14, 1841."

*Hathaway,* for the defendant, contended, that Smith was an incompetent witness by reason of interest.

But if Smith was a competent witness, his testimony was inadmissible. It was not competent for the plaintiff to explain, control or vary the effect of the writings by parol evidence.

The writing of July 14, 1841, signed by Smith, was offered by the plaintiff as evidence of his title, and he should not have been permitted, as he was, to vary the effect of it by the testimony of Smith.

The oxen attached were never the property of the plaintiff. The case shows, they were purchased and paid for by Smith long after his contract with the plaintiff.

It was Smith's election to return the oxen or pay the sixty-five dollars. They therefore became his property as soon as he received them. The instruction on this subject was erroneous.

The Judge erred in refusing to give an instruction to the jury on the subject of fraud, as requested by the defendant. *Lapish* v. *Wells,* 6 Greenl. 191.

*D. T. Jewett,* for the plaintiff, said that the objections made to the admissibility of the testimony of Smith went only to his credibility, not his competency. He was not permitted to vary or contradict any writing by his testimony.

The question of fraud was submitted to the jury, and rightly, as it was exclusively for their determination. But there was no evidence before the jury tending to prove fraud.

The question whether the payment of the money was for the oxen, or towards the land, was properly submitted to the determination of the jury, as a matter of fact. The receipt is merely evidence of payment, and it was competent to show, when and for what purpose the payment was made.

This was not a bill of sale, where it was left optional with

George v. Stubbs.

the party, whether to pay the money or return the property. The writing expressly provided, that the oxen should remain the property of the plaintiff until payment was made.

The opinion of the Court was prepared by

SHEPLEY J. — The oxen claimed by the plaintiff were taken by the defendant, a constable, as the property of Joseph Smith, on August 18, 1843, by virtue of a precept against him in favor of Lowell, a creditor. The plaintiff presented as evidence of his title a contract, bearing date on July 14, 1841, and an indorsement made on it bearing date on July 8, 1842, both signed by Smith. The counsel for the defendant contends, that the property passed by that contract to Smith without any proof of payment of the money, named in it. It is distinguishable from the class of cases alluded to in the argument. It is an agreement to sell the oxen on condition of receiving payment within a stipulated time; and differs from that, upon which the case of *Dearborn* v. *Turner*, 16 Maine R. 17, was founded. The person, from whom the defendant in that case purchased, had an option to return the property, or pay for it within a stipulated time, secured to him by the contract.

Smith was introduced as a witness for the plaintiff. Counsel insists, that his testimony should have been excluded, because it appeared by other testimony in the case, that he was interested, and refers to the testimony of other witnesses proving his declarations, that if the case was lost it would ruin him. The declarations of a witness made to others, that he is interested in the event of a suit, do not prove him to be so, or that he is an incompetent witness. Another complaint is, that he was allowed to contradict or vary the contract in writing by his testimony. This does not appear to be correct. His testimony as stated in the bill of exceptions, only narrates, so far as it relates to that contract, the circumstances under which it was made, and the time, when it was executed and the money paid.

To determine whether the instructions and other proceedings were correct, it will be necessary to examine the testimony

exhibiting the dealings between the plaintiff and Smith. It shows, that the plaintiff bargained with Smith on May 8, 1841, to sell him a farm or tract of land for $600, to be paid in six annual payments of $100, with interest; and gave him a bond to convey it upon payment thereof according to the agreement. That in the month of June following, Smith received a yoke of oxen of the plaintiff, and it would seem upon the terms contained in the contract afterward signed and dated on July 14, following. For the father of the plaintiff testified, that he wrote that paper at the request of his son, and according to his instructions, about the time, when Smith first took the oxen.

Jonathan Wood testified, that he bargained with Smith and paid him $95, for a lot of land on July 2, 1841. That this sum was paid by paying Smith $30, and by paying the plaintiff $25 cash, and $40 by a note payable in one year with interest. Were the oxen thus paid for on July 2, 1841? Smith states, that he never paid a cent to the plaintiff for the oxen. Whether he meant more than to say, he never paid any thing from his own hand in money without denying, that he received pay in part, for a lot of land, by Wood's paying $65 for them to the plaintiff, may not be quite clear. Wood says, that he told him, that he sold the land to buy the oxen, and would not have sold it so low, but for the sake of getting them. The first payment to the plaintiff for land would not become due for about ten months. Noah Doane testified, that Smith told him, that he bought the oxen of the plaintiff. Other witnesses testified, that he said he bought them of the plaintiff and gave $65 for them. That was the sum agreed to be paid for them, and the sum which Wood paid to the plaintiff on July 2, for Smith. Solomon Hervey testified, that the plaintiff told him the latter part of June, 1842, that Smith had not paid the interest on his notes for the land, and Wood had not paid for the oxen within ten or twelve dollars. Wood states, that he paid on the note of $40, given by him to the plaintiff as part of the $65, on April 27, 1842, $30; and the remainder, three or four days after the note became due

on July 2, 1842. Both of the plaintiff's statements to Her-
vey would be substantially correct, if the $65 were paid for
the oxen; and both incorrect, if they were paid towards the
land notes; Smith states, that he killed one of the oxen in
December, 1841, and obtained another ox of his brother, for
$33, paying partly by the proceeds of the ox killed and the
residue out of his own property. That soon after he exchang-
ed those two oxen, with Daniel Atwood, by the plaintiff's
advice, and paid $25, of his own money, for the exchange.
Such dealing with the oxen, and such payments made from
his own funds are inconsistent with the position, that the oxen
were the property of the plaintiff; and consistent with the
position, that the sum paid by Wood was received in payment
for them.

Is this aspect of the case materially changed by the written
documents made between Smith and the plaintiff? The con-
veyance of the lot of land sold by Smith to Wood, was not
made and executed until July 14, although payment had been
made on July 2. On the day, when that conveyance was
executed, the plaintiff gave Smith a receipt for the $65 re-
ceived of Wood, "to be applied to his notes, which notes said
Smith had given him for land, when called for." This is not
inconsistent with the idea, that it also paid for the oxen, for it
was part of the agreement as exhibited in the written contract,
that the sum paid for the oxen should also be applied in part
payment towards the land. The contract, which had been
prepared about the time, when the oxen were delivered to
Smith, was executed on the same July 14; and provided, that
the oxen should become the property of Smith upon pay-
ment of $65, on or before May 8, 1842; and Smith therein
acknowledged, that he had borrowed them of the plaintiff. If
the oxen had in fact been paid for, according to the terms of
that contract, before it was signed and while the contract exist-
ed only in parol, the title to the oxen passed to Smith, and the
execution of that paper, whatever might be its effect between
the parties to it, could have no effect upon the title to the
oxen, so far as it respects Smith's creditors. That title, as it

respects them, could not be transferred again to the plaintiff without the payment of a valuable consideration for it.   And for a like reason, that there was no consideration paid for it, the writing indorsed on the back of the contract and signed by Smith on July 8, 1842, could not in such case transfer the title to the oxen, then in possession of Smith and obtained as before stated, to the plaintiff, so as to deprive Smith's creditors of their rights.   There was some testimony introduced by the defendant to show, that these arrangements between the plaintiff and Smith, so far as they had reference to the oxen, were designed to prevent their being taken by Smith's creditors ; and the District Judge was requested to instruct the jury, " that there was evidence tending to show, that the transactions relative to the oxen, between the plaintiff and Smith, were fraudulent as against Smith's creditors."   This request was properly refused.   It is the duty of the Court, on request, to instruct the jury, what the law applicable to the testimony is. It is not its duty to express an opinion on request as to the effect of that testimony, when it is contradictory, or as to its tendency to produce any particular result.   The instructions, which were given, appear to have been founded upon the supposition that Smith could become the owner of the oxen only by proof " that he had paid the sixty-five dollars in pursuance of the terms of the contract of July 14, 1841."   This the jury must have understood to mean in pursuance of or in performance of the written contract after its execution on July 14, 1841.   It has already been stated, that the oxen might, according to the testimony, have become the property of Smith before that time, and these instructions therefore on being applied to the testimony in the case would be suited to mislead the jury.

<em>Exceptions sustained and<br>new trial granted.</em>